Our final case on the call of the docket today is agenda number 17, case number 111-253, Bettorf v. Pierce. Counsel for the appellant. Mr. Horner, my name is Brian Funk. I am the attorney for Whitney Wisnasky-Bettorf, who is the appellant and the candidate in this case, or who was an aspiring candidate. As the court is aware, this case involves a question of first impression involving the interpretation of section 7-61 of the election code as it was amended on January 1, 2010, pursuant to Public Act 96-809. Specifically, the question, the issue in this case, or the main issue in this case, is whether an established political party is required to file a resolution in order for its designated candidate to fill a general primary vacancy under section 7-61. And for brevity's sake, I refer to the primary vacancies that are set forth in paragraph 9 of section 7-61 as a general primary vacancy and a consolidated primary vacancy, as the candidate did in her brief. The second issue, which was an alternative argument, is if a resolution is required to be filed under 7-61 by an established political party, when is an objection required to be filed by an objector under paragraph 6 of 7-61 and sections 10-8 through 10-10.1 of the election code? Ordinarily, in a statutory interpretation analysis, we start with the plain language of the statute, which is obviously the best evidence of the intent of the legislature. In this case, I think it's important to just briefly touch on a couple of past amendments of 7-61, which highlight and show the significance of the changes that were made on January 1, 2010. Prior to 1980, section 7-61 only allowed established political parties to fill vacancies that occurred when a candidate was nominated and then either died or declined the nomination. Primary vacancies, general primary and consolidated primary vacancies, were not contemplated in the statute at that time. In 1980, the legislature did provide for primary vacancies to be filled. They added a paragraph, which is developed into paragraph 9 in the current statute, that allowed for established political parties to fill vacancies that occurred when nobody was nominated at the primary. And then instead of putting specific filing requirements in the primary provision at that time, the legislature mandated that these primary vacancies be filled in accordance with the requirements of the section, effectively linking the primary provision to the already existing mechanisms for filling vacancies, which was the resolution. And at that time, the resolution was the only mechanism for filling vacancies. In 1985, the legislature amended paragraph 9 and divided the primary provision into two separate provisions, one specifically related to consolidated primaries and one specifically related to general primary vacancies. Without the language that required or mandated that these primary vacancies be filled in accordance with the requirements of this section, there would have been no way or no link between paragraph 3 and no mechanism for which to fill the primary vacancies. The statute, as I stated before, did not contemplate primary vacancies originally. It was tacked on by the legislature in 1980. In January 1, or on January 1, 2010, the legislature struck the language in accordance with the requirements of this section from the general primary provision and replaced that language with specific filing requirements for the candidate, not the established political party. Excuse me. And the basis for this, according to the legislative reports, was that the legislature wanted to put these candidates on the same footing as the candidates that had to go through the process of getting circulating nominating petitions, filing those nominating petitions, and running in the primary. So after they struck the language in accordance with the requirements of this section, essentially severing all ties from paragraph 9 to paragraph 3, they put in the following language to be complied with by the designated candidate. It states that a general primary vacancy shall be filled only by a person designated by the appropriate committee of the political party and only if that designated person, not a committee, files nominating petitions. This language is as clear as can be. It is now the designated person, the person that the established political party designates, that is the only person, the only interested participant who can fill the vacancy. The resolution is no longer the mechanism for filling the vacancy. At this point, the case at the electoral board and the appellate court level should have been done. The plain language of the statute is evident. It's clear, it's concise, and it's direct. Unfortunately, that did not happen, and both the electoral board and the appellate court found that a resolution was required to be filed. But in addition to the plain language of the statute, there are numerous other reasons why the electoral board and the appellate court should be reversed. First and foremost, the state board of elections, right before the appellate court heard this case, heard two cases in which they reviewed this specific issue. In both of those cases, the state board of elections, the hearing officer and counsel for the state board, found that a resolution did not need to be filed or should not have been filed and that paragraph three did not apply to paragraph nine. In addition, the state board also found that Osborne, 4K to Osborne v. Madison County Electoral Board, which was a fifth district case that was heard in 2002, did not apply to the current statute because of the amendment. Finally, the state board of elections recognized, as the candidate had on judicial review, that if a resolution is required to be filed, then that resolution is required to be accompanied by a statement of candidacy and a statement of economic interest. Those documents have to be filed with the resolution by the party if it is to be filed. Then, months later, paragraph nine requires that those same documents be filed together with the candidates' nominating petitions. So here you have duplicate filings of the same document if we were to believe the appellate court and the electoral board. It's unbelievable that the legislature would miss something so blatant. So if the appellate court is correct, then there is no doubt you will have duplicate filings of these documents, which begs the question, what happens then? I maintain that litigation is going to be significantly increased or could be significantly increased as a result of this. For example, you would have two objection periods, one for the initial filing of the statements  or you'd have one objection period at the end of the, when the candidate files their nomination papers. If that's the case, you'll have a situation as it happened in this case where the candidate went out, circulated nominating petitions, did everything that was required of her under paragraph nine, filed those documents only to find out she never had the authority to do that because the resolution that designated her as the candidate was defective. Was defective or not filed? It was filed late. That was the issue that was raised at the electoral board is that if you have to file a resolution, and this happened in the fifth district, the fifth district in Osborne said that a resolution needs to be filed within three days after the date that the committee takes action to fill the vacancy. Would that mean that those two documents, the document the candidate files and the resolution should be filed at the same time? Because there could be some hanky-panky by the board not filing and leaving the candidate out in the cold. Well, we maintain that the resolution doesn't need to be filed at all. It's the specific language of the resolution filing requirement is the resolution filling the vacancy. And it no longer fills the vacancy. The legislature made clear that it did not want it to fill the vacancy. It wanted to take that power away from the established political parties. So we maintain that it shouldn't be filed in the first place. But if it is filed, then you would run into this problem. And it also raises an issue of whether if the first statement of candidacy or statement of economic interest is defective, can the candidate remedy the problem and then file it with her nominating petitions? One way or another, these issues will be litigated if the appellate court is not reversed. And I'm sure they will pop up at some time. Also, there is no purpose to filing the resolution any longer. The resolution is, as its terms provide, a resolution filling the vacancy. The established political party no longer fills the vacancy. It's done only by the candidate, only when he or she files nominating petitions. It was argued before the electoral board by the objector that the resolution now becomes a notice provision. Nowhere in the plain language of the statute does it say that the resolution is now a notice provision. It says it's a resolution filling the vacancy. And the legislature was obviously aware of the fact that notice does have to be provided to the election authority that this person has the blessing of the established political party to fill the vacancy. And they provided for that in paragraph 9. They now require, or the statute requires, an established political party to provide a notice of appointment to the candidate. And the candidate is required to file that document together with the nominating petitions, statement of candidacy, and statement of economic interest. So by filing the resolution, all you're doing is requiring a meaningless and superfluous document that can create additional litigation and a document that's got to be accepted, reviewed, and maintained by the election authorities across the state. The electoral board found that the resolution was required to be filed only because the language resolution filling the vacancy was still in the statute. To them, well, frankly, there was not much analysis put into it, and the decision doesn't provide much insight into how they arrived at the conclusion. The appellate court found that the resolution needed to be filed as well. The appellate court recognized that the operative language in the statute is the words in accordance with the requirements of this section, or at least it was before January 2010. And the appellate court recognized that that was specifically removed pursuant to Public Act 96-809. But the appellate court found that since it's still in the statute in sentence 1 of paragraph 9, that it has to apply to general primary vacancies. It's hard to understand exactly how they could misunderstand sentence 1 of paragraph 9 as it states that it is specifically addressing consolidated primary vacancies. There was a sentence, the first sentence of paragraph 9, that said if a consolidated primary vacancy occurs, you can fill it in accordance with the requirements of this section. Sentence 2 was the general primary, which mirrored the first sentence. The legislature removed that language from the second sentence and left it in the first sentence, which is the consolidated primary vacancy. The reason for this is because the resolution is still the mechanism for filling consolidated primary vacancies. It's just no longer the mechanism for filling general primary vacancies. The appellate court maintained that it would be rendering that first sentence meaningless if it didn't apply it to general primary vacancies. And once again, that's hard to understand because it's not meaningless. It applies to consolidated primary vacancies. Surely when the legislature says something applies to the consolidated election cycle, it doesn't apply to the general election cycle. But does section 7-61 refer to any vacancy? And then why wouldn't it not apply to general primary vacancies? I don't think I understand your question. I'm sorry. You were saying about it applying to one vacancy and not the other kind. But doesn't section 7-61 apply to any vacancy? That's what the appellate court found. They said that all of the requirements of section 7-61, no matter where they're found or how they're limited by explicit language, they apply to all the vacancies in nomination. And according to the appellate court, that was their finding in Osborne, which that was the exact opposite of their finding in Osborne. In Osborne, they said, we look at the explicit language. And if the legislature wanted to limit a term based on election cycle, they would say that it applies only to this election cycle. Well, that's exactly what the legislature did here. And so the 5th District, I think, got away from its decision in Osborne. Had it applied the same analysis, I think they would have arrived at a different conclusion. The other point is that the 5th District didn't work through what effect this would have on different vacancies. So the appellate court said, well, the consolidated primary requirement applies to the general primary requirement. That's fair enough. That works in this case. But the converse must be true as well. And that is that the general primary now applies to the consolidated primary. So in order to fill a consolidated primary vacancy under the appellate court's interpretation of the statute, a candidate, the designated candidate, would have to file nominating petitions within 75 days of the general primary. It doesn't make sense. You can't file nominating petitions within 75 days of a date in the next or preceding year. So it's clear that the appellate court did not work through all of the situations that would occur from their decision. And frankly, the decision of the appellate court is just untenable. And it renders portions of the Section 7-61 inoperative. In addition to the resolution filing requirement, this appeal, as I stated earlier, also involves when an appeal or when an objection should be filed. The appellate court found that an objection should be filed five business days after the last day for filing nomination papers. But that's not what the statute says. The statute adopts the rules applicable to nomination papers. And instead of applying the rules to the resolution that apply to nomination papers, the appellate court applied the rule to the nomination papers filed under Section 7-61 and then used that date. So instead of applying it directly to the date of the resolution, they applied it to the nomination papers and then used that date for resolutions. But the statute plainly states that if you're going to object to a resolution or any document under Section 7-61, you need to file that objection within five business days after the last date that document could have been filed, which did not happen in this case. So whether a resolution should have been filed or not in this case, the objector's objection was untimely. Therefore, the appellant requests that the court reverse the electoral board and the appellate court in this case. Thank you. Thank you. May it please the court. I'll be the first to wish you good afternoon, Your Honors. Counsel. I wanted to begin talking about something, an explanation that I didn't hear in Petitioner Appellant's argument. But before I do so, I'll introduce myself. I'm Garrett Horner. I represent Respondent Appellee Peggy Pierce in this matter. And I'd like to begin with the Petitioner Appellant's failure to respond to Justice Burke's inquiry. And that is related to an axiom of statutory construction, and that's that this court must construe the statute as a whole. What's been commonly referred to in the appellate court's order and in this argument as the third unnumbered paragraph of Section 7-61, it's that third unnumbered paragraph that contains the resolution filing requirement. It states that the resolution must be filed by the party, the political party, within three days of the appointment of somebody involving the vacancy. Mr. Horner, I agree with that proposition in looking at the statute as a whole. And in looking at it as a whole, in looking at Section 7-61, paragraph 4 states that a nominating resolution, quote, shall include upon its space, and it goes on to say, the name of the original nominee. And then paragraph 3 states that the failure to properly file a nominating resolution, again, quote, shall authorize the certifying officer in our board to certify the original candidate. Who was the original candidate in this case? Well, in this case, there was a vacancy because there had not been a candidate. And I don't think that there is a dispute either with the three appellate decisions that were cited by the appellate court or in the petitioner appellant's own brief that that resolution, a failure to file that, does apply in the 4K to Osborne decision. What they're claiming now is that... Well, just looking at the language of the statute, there isn't an original candidate. Why are we even talking about nominating resolutions? Because this statute has been construed previously by the appellate court and has been conceded in both briefs in this case that it does, in fact, apply to circumstances where there wasn't a general primary candidate either by nomination or write-in. So it has been applied, and I believe it's because... In appellate court decisions. Well, those are appellate court decisions interpreting it, and that has been the interpretation of the parties here. And I would refer first to the first and second sentence of Paragraph 3 that says any vacancy in nomination... And the second sentence leads it the same way, and that is the provision that is operative here because that is the paragraph that contains the resolution filing requirement. Now, it is true that it was subsequently amended to include general primary vacancies and consolidated primary vacancies, but that language was left in by the appellate court both in the... really in all the amendments that have been discussed already today, both going from the 80s all the way to the 2010 amendment. And, of course, the case law from this court indicates that the legislature is presumed to know what's in there and know how case law has interpreted it, and they could change it if they see fit, and they did not do so in this case. Again, Paragraph 3, which is the filing requirement, refers to any vacancy in nomination, which means all vacancies in nominations. It doesn't mean certain vacancies in nomination. So it's the respondent appellee's position that based upon that plain language and reading this statute as a whole, that filing requirement would apply to any vacancy, regardless of whether or not it's a vacancy caused by death or somebody declining the nomination or there simply not being a nomination at the primary election, whether it be consolidated or general. And, again, the appellate court... I don't understand that argument, sir. You have Paragraph 8 talks about a vacancy in a nomination which occurs after a candidate has been nominated and the provision dies or declines nomination. That seems to have the same sense as this earlier language that Justice Thomas pointed out. And then the next paragraph, 9, seems to be more about what we have here. If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in, then this procedure seems to kick in. Can you help me? It appears that even though there's one statute, and we all know that's not numbered, the first section seems to be dealing with the kinds of vacancies where the candidate who was listed is no longer going to be a candidate, but from 9, 9 itself is talking about when there's been no candidate listed at all. Why is that not a fair reading? Because in Paragraph 8, Your Honor, it does end with provided that nominations may become vacant for other reasons. And I think that what the legislature did later in amending this was it recognized two specific reasons. But it did apply the resolution requirements on the political party by using the words in accordance with this section. With regard to that, though,  Was it a mistake? No, it was removed because what they did was they put specific requirements on the candidate in addition to what is already required in unnumbered Paragraph 3. What they did here, and I think the appellate court correctly noted, that the amendment did not change the requirements for the political party. It only changed the qualification of the candidate. And what it's, again, that remains, that political party requirement of filing the resolution remains what I call the initial requirement. It's an initial requirement in filling the general primary vacancy. What they did was they added a second part to that process. And, of course, to the extent that this is deemed ambiguous language, there's an explanation in the legislative debate for that. But it provides what is an additional requirement on the candidate to ensure that the candidate satisfies certain requirements that's similar to what somebody who had run in the primary would have satisfied. Just to clarify, excuse me, something you said earlier about prior case law. Excuse me. There's been none that you're aware of since January 1 of 2010. Is that correct? That is correct, Your Honor. And then the second question, following up on Justice Tice, she was citing from what's an unnumbered Paragraph 9, referring to the consolidated primary, but really we're here on a general primary ballot question this year. Is that not correct? That is correct, Your Honor. And then the question I have then, I guess, is, under our rules of statutory construction, why wouldn't we look at what is, seems to be more specifically directed at a general primary election when no name appeared on the ballot at any time and look at that section? As opposed to the other sections. Your Honor, it's Respondent Apelli's position that you must construe this section as a whole. This isn't a circumstance where you're referring back to another section within the election code or statute of limitations circumstance where you're applying two separate sections. This is the same section, and reading it as a whole, going back to the filing requirement, again it says any vacancy, not certain vacancies. It doesn't identify some vacancies for the filing requirement. It makes reference specifically to any, which I would deem to be all vacancies. What's the purpose behind requiring both the resolution within three days and the nominating petition within 75? As counsel did indicate, the purpose would be the notice provision. And the reason is, as was indicated in the legislative debates, what the legislature was trying to implement was a circumstance where somebody would not only have to be appointed by the political party, but they would also have to satisfy the same signature requirements as they themselves or any other candidate who went through the normal primary process prior to a vacancy as they had done. And what that does is it provides notice because you need public notice to know who is the appointed person to properly circulate nominating petitions because as a voter, a registered voter, we're allowed to sign one primary petition. If we sign more than one, we invalidate our signatures. So I think in fairness to the general public that's going to be signing these, the registered voters and the general public that's going to be signing these petitions, they have a right to know who is the appointed individual and of course who is not and what would happen is if the decision isn't made in advance, you could conceivably have multiple candidates vying for a vacancy, circulate the petitions, and then go to the political party and then they would have a choice to make. And again, if I were to refer you to the portions of the legislative debate cited by the appellate court, they said that they would identify, this is Representative Fortner who was speaking on the legislative intent, said they would identify who their candidate is, then that candidate would proceed to get signatures. But I would also note what Representative Fortner said which is very telling, is that the only change this bill would make is to say that if they wish to so fill it, that person still must get signatures like the party would have had to qualify the candidate before the primary. That's the only change. Are there two filing requirements then? Filing within three days and then filing the notice again within 75 days along with the signatures? Yes. It references two different documents, Your Honor. It references a resolution that is filed within three days which did not happen in this case. It was filed late and that's conceded. And then there was a notice of appointment filed and that is what is filed after the end of the 75 days. That completes the process for filling this general primary vacancy. And again, to the extent that this language is deemed ambiguous by this court, I would point out that I believe the most compelling extrinsic evidence, even more so than the legislative debate on this section, is the fact that in this case, the petitioner appellate attempted to comply with unnumbered paragraph three. However, she did so late. She did so after five days instead of three days. And again, relying on its own decision in 4K to Osborne and two other appellate court decisions, the appellate court for the Fifth District did in fact find that that untimeliness violated mandatory requirement and that violation of mandatory requirement warranted removal.   did not want to be removed from the ballot. So it's for those reasons that the petitioner, I'm sorry, the respondent appellee believes that the law remains that in order to fill a vacancy existing because a general primary does not yield a political party nominee for an office, section 7-61 initially requires the county central committee, with the election authority within three days of the appointment of a nominee and then at that point, the candidate is then required to go out and get the signatures and file a statement of candidacy along with the nominating petitions and the notice of appointment and the statement of economic interest within 75 days of the general primary. So the completion of that process is what gets me to the second issue in this case and that's the issue that section 7-61 specifically adopts the objection procedures in section 10-8 and section 10-10.1 relating to the objections to nomination papers. And again, under that process, it's the filing of the resolution then the later filing of the petitions along with the other nomination papers. In this case, the general primary was held on February 2, 2010. Under section 7-61, the last day the petitioner could complete that process was April 19, 2010, 76 days after the general primary being a Monday since the 75th day fell on a Sunday. Pursuant to 10-8, the objector had five business days or until Monday, April 26 to file her objection seven days after the last filing of the nomination papers since, again, the fifth and sixth days fell on Saturday and Sunday. In this case, that is the exact day that the respondent, I believe, filed her objections to the nomination papers and therefore the appellate court, the circuit court, and the electoral board all properly determined that those objections that you touch on was the initial issue I raised related to the mootness doctrine. I would like to reserve that issue because there has not been a change in the section 7-61 as was indicated, but if there is, I would like to reserve that opportunity to raise that with this court understanding this court's determination of the mootness exception in the Sinkus matter. If there's no further questions, I'd like to say that I thank you for your time today and I would respectfully request on behalf of the respondent appellee, Peggy Pierce, that you affirm the decision below. Thank you. Thank you. I'd like to respond to the argument with regard to section 10-8 and when objections need to be filed to the resolutions. As recognized by the objector, the appellate court found that you calculate the days, the objection period for resolutions by counting off five business days from the date that nomination papers were filed and that's the deadline according to the appellate court. My question would be before January 1, 2010, how were objections filed when no nominating petitions were filed under section 7-61? Does that mean that no objection deadlines could be set? Certainly not. It's a misinterpretation of the statute and that's evidence of that fact. With regard to Justice Burke, I must have misunderstood your question. As far as I agree that the statute must be read as a whole, but that doesn't mean that explicit language or explicitly limiting provisions is thrown out the window. It doesn't mean that the legislature can't limit provisions to specific situations such as consolidated primaries or general primaries. The cases relied on by the appellate court, none of them presented the issue which is presented by this appeal and that is because the statute was amended giving rise to this appeal. The issue here is whether a resolution needs to be filed. In all the cases cited by the appellate court and referenced by the objector is how is that resolution supposed to be filed, within what time period, with what requirements, but it's not whether the resolution needs to be filed. With regard to prejudicing the residents and voters in a particular jurisdiction because they were unaware that someone did not have the authority to seek their signature on their nominating petitions, a resolution is not going to stop that. A resolution has no power to do any of that. It's impossible to believe that a resident or a voter is going to go to the election authority to check for a resolution before determining whether to sign a nominating petition for a particular candidate. And I would disagree with the objector's interpretation of paragraph 3 of section 7-61. As the court can see, the two first sentences say nothing about the resolution filling the vacancy or when the resolution filling the vacancy should or should not be filed. Those two sentences that begin with the word any that the objector is relying on speak only to those situations where a candidate is nominated and then either dies or declines the nomination. And the provision at the end of that paragraph that states that provided it could become vacant for other reasons just states that there might be illness, there might be another reason why this person is not running. But that language is in the statute prior to the addition of the primary's vacancy. So there's no need if that is addressing primaries that provided that vacancies can happen for other reasons, if that's addressing vacancies then the legislature never would have had to include paragraph 9 in the statute. Counsel, if we agree with your position, what are we left with there? What resolution? Well, what would happen would be that in a general primary vacancy there would be no resolution filed and the candidate would be the designated candidate that was designated by the established work party and given a notice of appointment would be the only person that would be able to fill the vacancy. And in this case? And in this particular case it would be to reverse the appellate court and the electoral board and that would be... And what would be the practical impact of the decision with respect to this case? I know what you're asking for future cases. In this case there is no relief that this candidate could get. She ran, she was removed from the ballot, her name was not restored and it's long since passed. But we believe strongly in our position and we  we can't have a bad law on this particular issue but it's going to cause a plethora of problems with the administration of section 7-61. So given the plain language and the practical effects of the amendment of section 7-61, we believe that requiring the resolution is just another impediment to ballot access and another way voters can be disenfranchised and subjected to uncontested elections. Therefore, we request that this court reverse the appellate court and the electoral court. Thank you. Thank you, counsel. Case number 111-253, Whitney Wisnowski Beddorf v. Peggy Pierce is taken under advisement as agenda number 17.